IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| STEPHEN LANDRY #2057064 | § | |
| VS. | § | CIVIL ACTION NO. 6:23cv057 |
| LONNIE TOWNSEND, et al. | § | |

REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

Plaintiff Stephen Landry, an inmate of the Texas Department of Criminal Justice (TDCJ) proceeding *pro se* and *in forma pauperis*, filed this civil rights lawsuit pursuant to 42 U.S.C. § 1983 alleging violations of his constitutional rights. The case was referred to the undersigned for findings of fact, conclusions of law, and recommendations for the disposition of the case.

**I. Plaintiff's Allegations and Procedural History**

Plaintiff originally filed suit in January 2023. On January 31, 2023, the Court found the original complaint to be deficient in several respects and ordered Plaintiff to file an amended complaint. (Dkt. #5.) Specifically, the Court noted that Plaintiff did not connect any of the named Defendants with any particular event described in the complaint and did not even mention any Defendant in his statement of claim. (*Id.* at 1.) Accordingly, the Court instructed Plaintiff to "explain in detail how, when, and where his constitutional rights were allegedly violated, identify the defendants responsible for each violation, specify how each defendant personally violated his constitutional rights, [and] explain how he was harmed or injured by those violations." (*Id.* at 2.)

Plaintiff's amended complaint does not entirely comply with those instructions. He fails again to even name any Defendant in his statement of claim, which alleges in its entirety as follows:

> Based on the ordered amended complaint facts proceeds as follows: Parties, "Defendants" were misled to catch me for a crime I wouldn't commit. A Government's Control Device, "The Guidance System Controls." Which initiated martial law on various levels due to how it was used, which was used & activated by the FBI to watch me, & for the defendants along with other parties illegally used it and implemented abusive practices, caused inmates to be convicted by the governments frequency & by the inmate phones to harm & affect me "retaliation." Willing to catch me committing a crime caused officers to break the law, break my civil rights, denying me my rights & even endangering my life. Causing also my property to be "taken" & lost & stolen multiple times. The physical abuse from the governments controls caused torture caused emotional stresses due to its secrecy within the United States Governments "control" & the situations I underwent "under watch" made it even more psychologically traumatic.

(Dkt. #8 at 4.)

Plaintiff provides little additional information in the course of identifying his Defendants. He alleges that Defendant Lonnie Townsend was the recipient of I-60s Plaintiff submitted expressing that his life was in danger and he was being sexually harassed, but Townsend failed to respond, "causing a unsafe environment." (Dkt. #8 at 3.) He also states in connection with Townsend that "Property was stolen," without further discussion. (*Id.*) Against "Safe Prisons Officers," including Defendant Rendone, Plaintiff alleges that: "I-60s sent to Safe Prisons weren't responded to & after filing multiple OPI's I was constantly told there wasn't enough evidence to verify 2 prior assaults after being expressed on the unit as a snitch. The 3rd incident I was almost strangled to death by an inmate." (*Id.*) He alleges against the "Law Library Clerk of 2021–2022" that "a few times" he was denied access and "true expert help," which deterred him from "fighting for [his] rights." (*Id.*) Plaintiff alleges that Sergeant Ponce stole or lost his property and that "Retaliation was sta[r]ted" after Plaintiff filed grievances. (*Id.*) Finally, he alleges that Defendant Carmichael somehow prevented him "from making a accurate payment for [his] civil suit." (*Id.*) The Court understands this to be a reference to Plaintiff's previous lawsuit, *Landry v. Michael's Unit*, No. 6:21-cv-00466, which was dismissed on June 6, 2022, for failure to pay the filing fee.

Plaintiff seeks unspecified compensation for lost and stolen property and for unnamed "physical harms, psychological & emotional stresses." (*Id.* at 4.)

**II. Legal Standards and Preliminary Screening**

Plaintiff is a prisoner seeking redress from an officer or employee of a governmental entity, and he is also proceeding *in forma pauperis*, so his complaint is subject to preliminary screening pursuant to the Prison Litigation Reform Act (PLRA), 28 U.S.C. §§ 1915A and 1915(e)(2). *See Martin v. Scott*, 156 F.3d 578, 579-80 (5th Cir. 1998) (per curiam). Those statutes provide for *sua sponte* dismissal of a complaint—or any portion thereof—if the Court finds it frivolous or malicious, if it fails to state a claim upon which relief can be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous if it lacks an arguable basis in law or fact. *Samford v. Dretke*, 562 F.3d 674, 678 (5th Cir. 2009). The Fifth Circuit has held that a complaint lacks an arguable basis in fact when "the facts alleged are fantastic or delusional scenarios or the legal theory upon which a complaint relies is indisputably meritless." *Id*. (quoting *Harris v. Hegmann*, 198 F.3d 153, 156 (5th Cir. 1999) (internal quotation marks omitted)). In other words, during the initial screening under section 1915A, a court may determine that a prisoner's complaint is frivolous if it rests upon delusional scenarios or baseless facts—and dismiss the complaint. *See Henry v. Kerr County, Texas*, 2016 WL 2344231 *3 (W.D. Tex. May 2, 2016) ("A court may dismiss a claim as factually frivolous only if the facts alleged are clearly baseless, fanciful, fantastic, delusional, or otherwise rise to the level of the irrational or the wholly incredible, regardless of whether there are judicially noticeable facts available to contradict them.") (citing *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992)).

Moreover, a complaint fails to state a claim upon which relief may be granted where it does not allege sufficient facts which, taken as true, state a claim which is plausible on its face and thus does not raise a right to relief above the speculative level. *See Montoya v. FedEx Ground Packaging Sys. Inc.*, 614 F.3d 145, 149 (5th Cir. 2010) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A claim has factual plausibility when the pleaded factual content allows the court to draw reasonable inferences that the defendant is liable for the misconduct alleged. *See Hershey v. Energy Transfer Partners, L.P.*, 610 F.3d 239, 245 (5th Cir. 2010); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This plausibility standard is not akin to a probability standard; rather, the plausibility standard requires *more than the mere possibility* that the defendant has acted unlawfully. *Twombly*, 550 U.S. at 556 (emphasis supplied).

All well-pleaded facts are taken as true, but the district court need not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions. *See Whatley v. Coffin*, 496 F. App'x 414 (5th Cir. 2012) (unpublished) (citing *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)). Crucially, while the federal pleading rules do not require "detailed factual allegations," the rule does "demand more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading offering "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" will not suffice, nor does a complaint which provides only naked assertions that are devoid of further factual enhancement. *Id.* Particularly with regard to any claim that defendants have conspired to harm him, a plaintiff must plead specific, non-conclusory facts that establish that there was an agreement among the defendants to violate his federal civil rights. *Priester v. Lowndes County*, 354 F.3d 414, 420 (5th Cir. 2004); *Lynch v. Cannatella*, 810 F.2d 1363, 1369-70 (5th Cir. 1987) (plaintiffs asserting

conspiracy claims under Section 1983 must plead the operative facts on which their claim is based; bald allegations that a conspiracy existed are insufficient).

A federal court has an independent duty, at any level of the proceedings, to determine whether it properly has subject matter jurisdiction over a case. *Ruhgras AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999) ("[S]ubject-matter delineations must be policed by the courts on their own initiative even at the highest level."); *McDonal v. Abbott Labs.*, 408 F.3d 177, 182 n.5 (5th Cir. 2005) ("federal court may raise subject matter jurisdiction *sua sponte*").

**III. Discussion and Analysis**

By separate order, the Court is authorizing service and requiring a response from Defendants Rendone, Safe Prisons Officers, and Carmichael on Plaintiff's arguably nonfrivolous claims for deliberate indifference to his safety and denial of access to courts. But the rest of Plaintiff's claims and Defendants should be dismissed.

Plaintiff does not allege any personal involvement by Defendant Townsend that would make him liable for any violation of his rights under Section 1983. Plaintiff presumably sues Townsend simply because he is a warden, but lawsuits against supervisory personnel based on their positions of authority are claims of liability under the doctrine of *respondeat superior*, which does not generally apply in Section 1983 cases. *Williams v. Luna*, 909 F.2d 121 (5th Cir. 1990).

A supervisor may be held liable under Section 1983 only if he is personally involved in a constitutional deprivation, a causal connection exists between the supervisor's wrongful conduct and a constitutional deprivation, or if supervisory officials implement a policy so deficient that the

policy itself is a repudiation of constitutional rights and is the moving force behind a constitutional deprivation. *Thompkins v. Belt*, 828 F.2d 298 (5th Cir. 1987). Plaintiff does not allege any facts that would support liability under any of these theories in this case. He alleges simply that Defendant Townsend did not respond to I-60 requests Plaintiff sent him. But "a failure to respond to a letter or grievance does not rise to the required level of personal involvement for liability." *Blakely v. Andrade*, 360 F. Supp. 3d 453, 489 (N.D. Tex. 2019); *see also Emmons v. Painter*, No. MO:20-CV-00185-DC, 2021 WL 2832977, at *10 (W.D. Tex. May 23, 2021) ("[A]llegations that Defendants' denial of grievances evidenced both their personal involvement and a policy of deliberate indifference do not withstand pretrial screening."); *Selders v. LeBlanc*, No. CV 19-13075, 2020 WL 5097599, at *3 (E.D. La. July 1, 2020), *report and recommendation adopted*, No. CV 19-13075, 2020 WL 5095328 (E.D. La. Aug. 28, 2020) (dismissing claims against defendant who "is in charge of the jail and responded to two of [plaintiff's] grievance complaints" because "having a role in the grievance process does not create personal liability much less supervisory liability").

Plaintiff alleges that he was deterred from fighting for his rights when the law library clerk denied him "access & true expert help" "a few times." (Dkt. #8 at 3.) But the Constitution does not provide inmates with "an abstract, freestanding right to a law library or legal assistance." *Lewis v. Casey*, 518 U.S. 343, 351 (1996). Accordingly, an inmate claiming that some obstacle to his legal research violated his First Amendment right to access the courts "must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim." *Id.* To state a claim under this standard, the inmate must be able to point to some actual injury to his litigation:

> He might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known. Or that he had suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable even to file a complaint.

*Id.* The nature of the underlying litigation is also material to this analysis. "[T]he inmate must show that a nonfrivolous, arguable claim he wished to bring has been lost or rejected due to the deficiency or that the deficiency is currently preventing his presentation of such a claim" and "[t]he underlying claim must be described well enough to apply the frivolity test and to show that its 'arguable nature . . . is more than hope.'" *Sanchez v. Stephens*, 689 F. App'x 797, 799 (5th Cir. 2017) (quoting *Christopher v. Harbury*, 536 U.S. 403, 415 (2002)).

Plaintiff does not identify any such underlying claim or explain how being denied access "a few times" caused any actual injury to the claim. The dismissal of *Landry v. Michael's Unit*, No. 6:21-cv-00466, for failure to pay the filing fee, was not the result of any lack of access to legal research. Accordingly, Plaintiff fails to state a claim against the unidentified law library clerk.

Plaintiff alleges that Sergeant Ponce stole or lost his property. But the deprivation of personal property by state employees—whether negligent or intentional—does not violate the constitution if the state provides "a suitable postdeprivation remedy." *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). Texas common law allows recovery of monetary damages for loss of property that has been taken without authorization. *See, e.g.*, *Murphy v. Collins*, 26 F.3d 541, 543 (5th Cir. 1994) ("In Texas, as in many other states, the tort of conversion fulfills this requirement."); *Cathey v. Guenther*, 47 F.3d 162, 164 (5th Cir. 1995). Texas statutory law also provides that inmates may recover up to $500 for lost or damaged property. *See* TEX. GOV'T CODE §§ 501.007, 501.008;

TEX. CIV. PRAC. & REM. CODE § 16.003(a) (providing a two-year statute of limitations for certain causes of action). Because Texas provides an adequate post-deprivation remedy, the loss of Plaintiff's property does not state a claim for any constitutional violation. *See Hudson*, 468 U.S. at 536.

Plaintiff's vague and conclusory reference to retaliation in connection with Defendant Ponce does not change that outcome. Officials may not retaliate against an inmate for exercising his right of access to courts or complaining to a supervisor about a prison employee or official. *Woods v. Smith*, 60 F.3d 1161, 1164 (5th Cir. 1995). Inmates can state a claim for retaliation in violation of the First Amendment by alleging "that (1) they were engaged in constitutionally protected activity, (2) the defendants' actions caused them to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the defendants' adverse actions were substantially motivated against the plaintiffs' exercise of constitutionally protected conduct." *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002).

Causation in a retaliation case requires a showing that "but for the retaliatory motive the complained of incident . . . would not have occurred." *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997) (internal citations omitted). "The relevant showing in such cases must be more than the prisoner's personal belief that he is the victim of retaliation." *Id.* (internal quotation marks omitted). "The inmate must produce direct evidence of motivation, or the more probable scenario, allege a chronology of events from which retaliation may be plausibly inferred." *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995) (internal quotation marks omitted). "Conclusory allegations of retaliation without a specific factual basis will not suffice." *Graves v. Mbugua*, No. 9:16-CV-170, 2020 WL 6947900, at *5 (E.D. Tex. Aug. 13, 2020), *report and recommendation adopted*, No.

9:16-CV-170, 2020 WL 6940783 (E.D. Tex. Nov. 24, 2020) (citing *Woods*, 60 F.3d at 1166). Trial courts are to carefully scrutinize claims of retaliation "[t]o assure that prisoners do not inappropriately insulate themselves . . . by drawing the shield of retaliation around them." *Woods*, 60 F.3d at 1166.

Here, Plaintiff says, without any discussion or explanation that he "was retaliated against" and that "[r]etaliation was stated after [his] grievances." (Dkt. #8 at 3.) He does not allege any factual basis connecting Defendant Ponce or his handling of Plaintiff's property with the grievances. The mere existence of past grievances and a subsequent negative event alone are not sufficient to state a claim for retaliation.

And finally, to the extent Plaintiff's cryptic assertion against Ponce can be construed to allege that Ponce somehow mishandled Plaintiff's grievances themselves, Plaintiff has no constitutional right to an effective prison grievance system, and any claim based on alleged failure of the grievance system is "indisputably meritless." *Geiger v. Jowers*, 404 F.3d 371, 374 (5th Cir. 2005); *see also Schwarzer v. Wainwright*, 810 F. App'x 358, 360 (5th Cir. 2020) ("Schwarzer cannot demonstrate that prisoners have a constitutional right to a grievance system.").

The remaining allegations in Plaintiff's Statement of Claim are either redundant to those addressed above, completely unrelated to any claims against the named Defendants, and/or clearly delusional. For example, much of that portion of the amended complaint is devoted to discussion of government control devices and a "governments frequency" through which the FBI is watching Plaintiff and causing other inmates to harm him. (Dkt. #8 at 4.) Such claims are subject to dismissal as factually frivolous. *See Gary v. U.S. Gov't*, 540 F. App'x 916, 916-918 (11th Cir. 2013) (affirming dismissal of complaint as frivolous where plaintiff alleged that government officials

implanted microchips in her body); *Owens-El v. Pugh*, 16 F. App'x 878 (10th Cir. 2001) (dismissing appeal as frivolous where plaintiff claimed he was being harassed and tortured through a mind-control device); *Williams v. Collier*, No. 1:10-cv-28, 2010 WL 2036699 (E.D. Tex. Feb. 4, 2010) (complaint alleging that prison doctors installed monitoring devices in prisoner's teeth to intercept his conversations dismissed as frivolous).

**IV. Conclusion**

For the reasons set forth above, with the exception of his claims against Defendant Carmichael and Prison Safety Officers including Rendone, Plaintiff's amended complaint is frivolous and/or fails to state a claim for which relief can be granted. Dismissal is appropriate where Plaintiff has already been given a chance to cure his deficiencies but still fails to state a viable claim. *See Jacquez v. Procunier*, 801 F.2d 789, 793 (5th Cir. 1986) (holding that "once given adequate opportunity, even a *pro se* complaint must contain specific facts supporting its conclusions"); *Garcia v. City of Lubbock, Texas*, 487 F. Supp. 3d 555, 566 (N.D. Tex. 2020) (dismissing where inmate had "already amended his complaint once" and been afforded "an opportunity to further flesh out his claims").

RECOMMENDATION

Accordingly, the undersigned recommends that Plaintiff's claims against Defendants Townsend, Law Library Clerk, and Ponce be dismissed pursuant to 28 U.S.C. §§ 1915A(b) and 1915(e)(2)(B), along with all claims about government control devices, guidance systems, or frequencies.

Within fourteen (14) days after receipt of the Magistrate Judge's Report, any party may serve and file written objections to the findings and recommendations contained in the Report. A party's failure to file written objections to the findings, conclusions and recommendations contained in this Report within fourteen days after being served with a copy shall bar that party from *de novo* review by the district judge of those findings, conclusions and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

**So ORDERED and SIGNED this 1st day of March, 2023.**

_____
JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE